UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 09-9325-VBF(RNBx)**              Dated: **January 4, 2012**

Title:   Robert Townsend -*v*- National Arbitration Forum, Inc., et al.

─────────────────────────────────────────────────────────────────────

PRESENT: HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

     Joseph Remigio                      None Present
     Courtroom Deputy                    Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

     None Present                        None Present

**PROCEEDINGS (IN CHAMBERS):**        **COURT ORDER RE MOTIONS TO DISMISS
                                      PLAINTIFF'S THIRD AMENDED COMPLAINT**


     Before the Court are motions to dismiss plaintiff Robert Townsend's
Third Amended Complaint filed by the following defendants:

    1.   W. Christopher Bracken III, M. Douglas Mann, and James D.
         Branton (Docket No. 101);

    2.   Palisades Collection, LLC, Asta Funding, Inc., Asta Funding
         Acquisition, LLC, Asta Funding Acquisition II, LLC, Asta
         Funding Acquisition III, LLC, Asta Commercial, LLC, and Asta
         Group (Docket No. 115);

    3.   JPMorgan Chase & Co and Chase Bank USA, N.A. (Docket No. 118);

    4.   Mann Bracken LLP (Docket No. 119);

    5.   Gerald E. Moore & Associates, P.C., Worldwide Asset Purchasing
         II, LLC, West Asset Management, Inc., Frederick J. Hanna and
         Associates, P.C., Asset Management Professionals, LLC, and
         Worldwide Asset Purchasing, LLC (Docket No. 125);

    6.   Darrell Tyrone Hanna, Frederick J. Hanna, Clayton Davis Mosely,
         Louis Feingold, Dennis Henry, Frank J. Hanna, III, and Gerald
         E. Moore (Docket No. 127);

MINUTES FORM 90                      Initials of Deputy Clerk ____jr____
CIVIL - GEN
                              -1-

7.  Accretive, LLC, Agora Fund I GP, LLC, and J. Michael Cline (Docket No. 131);

8.  First National Bank of Omaha, N.A. (Docket No. 143);

9.  Bank of America, N.A. (Docket No. 146);

10. National Arbitration Forum, Inc., National Arbitration Forum, LLC, Dispute Management Services, LLC d/b/a Forthright, and Michael Kelly (Docket No. 148); and

11. First National Collection Bureau, Inc. (Docket No. 150).

Pursuant to Local Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument.

I.  Factual and Procedural Background

Plaintiff Robert Townsend ("Plaintiff") filed this action on December 21, 2009.  Plaintiff filed a First Amended Complaint ("FAC") on February 12, 2010, which the Court dismissed with leave to amend on March 24, 2010, pursuant to motions filed by various defendants. Plaintiff filed a Second Amended Complaint ("SAC") on April 8, 2010, which the Court dismissed *sua sponte* for Plaintiff's failures to correct the deficiencies identified in the FAC.  The Court wrote:

> The Court has reviewed the Second Amended Complaint ("SAC") and has determined that it fails to comply with Rule 8 . . . for the same reasons set forth in the Court's orders dismissing the [FAC], and also fails to comply with the Court's orders that the SAC correct the deficiencies identified in the [FAC]. For example, the SAC does not adequately connect the 77 introductory paragraphs with its 11 causes of action against the over 40 named defendants, such that each defendant may have reasonable notice of the allegations against it.  *See McHenry v. Renee*, 84 F.3d 1172, 1179 (9th Cir. 1996)("Prolix, confusing complaints . . . impose unfair burdens on litigants and judges").  Federal Rule of Civil Procedure 8(d), requiring each allegation "of a pleading to be 'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *McHenry*, 84 F.3d at 1179.

MINUTES FORM 90                          Initials of Deputy Clerk ___jr___
CIVIL - GEN

Order (Docket No. 86).  Plaintiff filed the Third Amended Complaint ("TAC") on April 23, 2010.

The TAC alleges nine claims against approximately forty defendants, among which are credit-card issuing banks, collection agencies, and the National Arbitration Forum ("NAF").  Plaintiff categorizes these defendants as follows:

1.   The "Bank Defendants": JPMorgan Chase, Chase Bank USA, N.A., Bank of America, N.A., Wells Fargo & Company, Inc., Wells Fargo Bank, N.A., and First National Bank of Omaha;

2.   The "NAF/Mann Bracken Defendants": National Arbitration Forum, Inc., National Arbitration Forum, LLC, Agora Fund 1GP, LLC, Mann Bracken, LLP, Accretive, LLC, Eskanos and Adler, P.C., Dispute Management Services, LLC, d/b/a Forthright, Inc., and Axiant, LLC;

3.   The "NAF/Mann Bracken Individual Defendants": J. Michael Cline, Michael Kelly, W. Christopher Bracken III, Clayton Davis Mosely [sic], M. Douglas Mann, and James D. Branton; and

4.   The "Debt Collector Defendants": Mann Bracken, LLP, 1st National Collection Bureau, Inc., Gerald E. Moore & Associates, P.C., Frederick J. Hanna & Associates, P.C., West Asset Management, Inc., Worldwide Asset Purchasing, LLC, Worldwide Asset Management, Inc., Worldwide Asset Purchasing II, LLC, Asset Management Professionals, LLC, Palisades Collections, LLC, Asta Funding, Inc., Asta Group Inc., Asta Funding Acquisition I, LLC, Asta Funding Acquisition II, LLC, Asta Funding Acquisition III, LLC, and Asta Commercial, LLC.

According to the TAC, the defendants engaged in a conspiracy to "rig" arbitration procedures by forcing consumers to agree to unfair arbitration clauses that disfavor consumers in connection with bank and credit card accounts.  Various defendants filed motions to dismiss the TAC.

On June 7, 2010, the United States Judicial Panel on Multidistrict Litigation ("MDL") transferred the case to the United States District Court for the District of Minnesota, for inclusion in MDL Case No. 2122 (Docket No. 169).  Following this transfer, activity in the case was stayed and the pending motions to dismiss the TAC were not ruled upon. On October 25, 2011, the case was transferred back to this Court from the MDL.

II.  <u>Legal Standard</u>

MINUTES FORM 90                           Initials of Deputy Clerk  <u>  jr  </u>
CIVIL - GEN

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In order to survive a Rule 12(b)(6) motion, typically a complaint need only give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (quoting *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 925 (9th Cir. 1993)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

With respect to antitrust claims, the allegations in the complaint "may not evade [antitrust] requirements by merely alleging a bare legal conclusion." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987).  "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed," especially in light of the fact that "antitrust discovery can be expensive." *Twombly*, 550 U.S. at 544. Plaintiffs alleging antitrust claims must set forth enough "factual matter" to "nudge[] their claims across the line from conceivable to plausible." *Id.*

## III.  Plaintiff's Standing to Pursue Claims

In order to properly demonstrate standing, Plaintiff must show (1) he suffered an "injury in fact;" (2) a causal connection between the alleged injury and each defendant's alleged conduct; and (3) a likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The defendants allege that Plaintiff's TAC has failed to sufficiently amend its allegations to establish Plaintiff's standing to litigate his claims.  For example, Bank of America, N.A. ("BofA") contends that each of Plaintiff's claims is based on the factual predicate that Plaintiff was forced to arbitrate certain claims relating to his credit card accounts, and because Plaintiff has failed to allege that any defendant requested or moved to compel him to such arbitration, he has failed to allege a cognizable "injury in fact."

However, because "a plaintiff must demonstrate standing for each claim he seeks to press," and for "each form of relief sought," the

MINUTES FORM 90                                    Initials of Deputy Clerk    jr
CIVIL - GEN

Court will address Plaintiff's standing in the context of each specific claim. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citations omitted); *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (same).

IV. <u>Plaintiff's First Claim: CLRA</u>

Plaintiff's CLRA claim alleges that all defendants violated Section 1770(a) of the California Civil Code.  Specifically, Plaintiff alleges that (1) the Bank Defendants and NAF/Mann Bracken Defendants each misrepresented its affiliation with the other; (2) the Bank Defendants, NAF/Mann Bracken Defendants, and Debt Collector Defendants each misrepresented the characteristics of NAF arbitrations, (3) the Bank Defendants, NAF/Mann Bracken Defendants, and Debt Collector Defendants each advertised NAF arbitrations deceptively; and (4) the Bank Defendants, NAF/Mann Bracken Defendants, and Debt Collector Defendants each misrepresented the rights and remedies conferred by NAF arbitrations.  TAC ¶¶ 79-82.

As an initial matter, none of the NAF/Mann Bracken Individual Defendants are specifically alleged to have violated the CLRA.  The Court has twice dismissed Plaintiff's complaint with leave to amend, explaining that Plaintiff had inadequately provided reasonable notice to each defendant of the specific allegations as to each defendant. Accordingly, Plaintiff's first claim is DISMISSED with prejudice as to each of the NAF/Mann Bracken Individual Defendants, as it finds that amendment would be futile.

Plaintiff's CLRA claim alleges that had Plaintiff known allegedly concealed information concerning NAF arbitration procedures, he would not have entered into the cardholder agreements with the various Bank Defendants.  TAC ¶ 83.  The Court finds this insufficient to confer standing on Plaintiff as to this claim.  For example, Plaintiff fails to allege that he read the cardholder agreements before signing them, or that the representations concerning the NAF were a factor in Plaintiff's decision to enter into the cardholder agreements.  *See, e.g., Sickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 996 (N.D. Cal. 2007).  Thus, Plaintiff has not sufficiently demonstrated Article III standing for his CLRA claim.

Plaintiff's CLRA claim also fails for another reason.  In order to implicate the CLRA, the alleged violations must be actions "undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.  CLRA further defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  *Id.* at § 1761.

MINUTES FORM 90                         Initials of Deputy Clerk    jr
CIVIL - GEN

Here, while Plaintiff alleges his CLRA claim relates to NAF arbitration services (TAC ¶ 76), this is insufficient.  In *Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224 (2007), the California Court of Appeal considered whether an arbitration clause and class action waiver in a cardholder agreement entered into between the plaintiff and defendant American Express could violate the CLRA.  *Id.* at 227.  After determining that a credit card was not a "good" under the CLRA, the court considered whether defendant's issuance of credit could constitute a "service."  *Id.* at 229.  After examining the text of the CLRA and its legislative history, the court concluded that "neither the express text of CLRA nor its legislative history supports the notion that credit transactions separate and apart from any sale or lease of goods or services are covered under the act."  *Id.* at 233.

*Berry* is analogous to the present situation, in that Plaintiff contends that an arbitration procedure to determine amounts owed under a cardholder agreement constitutes a "service" under the CLRA.  For the same reasons articulated in *Berry*, the Court concludes that it does not.  Also persuasive by analogy is *Fairbanks v. Superior Court*, 46 Cal. 4th 56 (2009), in which the California Supreme Court ruled that "life insurance" was not a "service" under the CLRA, because "[a]n insurer's contractual obligation to pay money under a life insurance policy is not work or labor, nor is it related to the sale or repair of any tangible chattel."  *Id.* at 61.  Plaintiff's contractual obligation to arbitrate before the NAF is, similarly, not "work or labor, nor is it related to the sale or repair of any tangible chattel."  Accordingly, Plaintiff's first claim for CLRA violations is DISMISSED as to all defendants with prejudice.

V.  Plaintiff's Fourth Claim: Bus. & Prof. Code Section 17500

California Business & Professions Code section 17500 makes it unlawful for a business to disseminate any statement which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.  *See Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*, 421 F.3d 981, 985 (9th Cir. 2005).

Plaintiff alleges that defendants jointly and severally "engaged in a deceptive, misleading advertising and marketing campaign to exalt NAF as a neutral arbitration forum governed by the highest legal and ethical standards, completely independent of its debt collection counterparts" (TAC ¶ 103), and made or caused "untrue or misleading statements with the intent to induce customers such as [Plaintiff] to buy arbitration services from them."  TAC ¶ 104.

Plaintiff's 17500 claim is substantively unchanged from Plaintiff's complaint, the FAC, and the SAC.  The claim was dismissed twice for

indefiniteness, but Plaintiff's TAC does not amend the allegations in support of this claim in any meaningful way.  Accordingly, for the reasons set forth in the Court's prior orders, Plaintiff's fourth claim is DISMISSED with prejudice.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008) (concluding that amendment would be futile where plaintiffs already filed an amended complaint containing the same defects as original complaint and failed to state what additional facts they would plead if given leave to amend, or what additional discovery they would conduct to discover such facts).

## VI.   Plaintiff's Sixth and Seventh Claims: Sherman Act

Plaintiff's sixth and seventh claims, for violations of the Sherman Act, 15 U.S.C. § 1, are asserted against the Bank Defendants. Plaintiff's sixth claim alleges that the Bank Defendants participated in a conspiracy to "impose or maintain compulsory arbitration clauses." TAC ¶ 113.  Plaintiff's seventh claim alleges that the Bank Defendants have "collectively refused to deal with any credit card holder / consumer," including Plaintiff, who refuses to accept the arbitration clause in the cardholder agreement.  TAC ¶ 120.  For these alleged violations, Plaintiff seeks treble damages and injunctive relief.

Plaintiff's TAC amends the sixth claim only by limiting former references to "all defendants" to the Bank Defendants, and by the insertion of the allegation that "Plaintiff has suffered an anti-trust injury."  TAC ¶ 118.  Plaintiff's seventh claim likewise is changed only in that it now limits "all defendants" to the Bank Defendants, and adds the allegation that Plaintiff is "unable to obtain and use credit cards unless he consents to binding arbitration as part of credit cardholder agreements."  TAC ¶ 124.

Again, to establish Article III standing as to Plaintiff's antitrust claims, he must allege (1) he suffered an "injury in fact;" (2) a causal connection between the alleged injury and each defendant's alleged conduct; and (3) a likelihood that the injury will be "redressed by a favorable decision."  *Lujan*, 504 U.S. at 560.

The Court concludes that Plaintiff has not sufficiently amended his complaint to allege standing as to his sixth or seventh claims.  While the TAC contains numerous allegations as to the Bank Defendants' alleged conduct, Plaintiff has not sufficiently alleged an "injury in fact," beyond the conclusory statements that he has suffered an antitrust injury (TAC ¶ 118), that he was "deprived of any meaningful choice on a critical term and condition of the [B]ank Defendants' general purpose credit card accounts as a result of the conspiracy" (TAC ¶ 116), and his allegation that "he is unable to obtain and use credit cards unless he consents to binding arbitration."  TAC ¶ 124.  But, because Plaintiff has not alleged that the arbitration provision was material in any way to his decision to enter into the credit card agreements, or that he was

compelled to participate in any arbitration proceedings, he has not alleged an "injury in fact."  Thus, the Court concludes that Plaintiff lacks Article III standing as to his sixth and seventh claims for relief.

For these reasons, Plaintiff's sixth and seventh claims are DISMISSED.  Due to Plaintiff's failure to cure his Article III standing deficiencies through prior attempts, the Court concludes that amendment would be futile.

VII.   <u>Plaintiff's Eighth and Ninth Claims: Civil RICO</u>

Plaintiff's eighth and ninth claims assert violations of the civil RICO statute, 18 U.S.C. sections 1962(a), (b), (c), and (d).  Plaintiff appears to assert that all Defendants are liable for their alleged conspiracy to "engage in unwarranted collection activities against Plaintiff, making him the subject of aggressive collection activities . . ."  TAC ¶ 126.

Plaintiff alleges that he has "personally been injured . . . [by] having been and currently being reported negatively to various credit reporting agencies when he had done nothing wrong or illegal, for the sole purpose of obtaining money from him."  TAC ¶ 130.  Plaintiff further alleges that he has suffered injury as a result of litigating this dispute.  TAC ¶ 148.

Plaintiff's allegations of injury relating to his credit score reports are sufficient to confer Article III standing.  In addition, however, Plaintiff must also have standing under the civil RICO statute. To demonstrate such standing, Plaintiff must show "that the racketeering activity was both a but-for cause and a proximate cause of his injury." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (*citing Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Proximate causation for RICO purposes requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* (citation omitted).

Here, the alleged RICO conspiracy is, in essence, Defendants' participation and control of a "rigged mechanism to ensure credit card holders such as Plaintiff could never successfully dispute credit card debts, in part by threatening to force, or attempting to force Plaintiff to participate in arbitration."  TAC ¶ 106.  As a means of effecting this result, Plaintiff contends that Defendants acted together to send him misleading and aggressive debt collection letters, in violation of the FDCPA, RFDCPA, and UCL.  TAC ¶ 109.

At this time, it appears that Plaintiff has sufficiently alleged civil RICO standing.  To the extent Defendants have argued that he lacks standing as to his RICO claims, those arguments are denied without

MINUTES FORM 90                                    Initials of Deputy Clerk    <u>jr</u>
CIVIL - GEN

prejudice.  While the Court recognizes that "one consideration [with respect to RICO standing] is whether a better suited plaintiff would have an incentive to sue."  *Rezner*, 630 F.3d at 873 (citation omitted).  While individuals who were actually forced into the arbitration process might be better suited and would certainly have an incentive to sue, the hypothetical existence of such individuals appears in of itself insufficient to strip Plaintiff of civil RICO standing.

Accordingly, the Court will turn to the substance of Plaintiff's RICO claims.  While Sections 1962(a), (b), (c), and (d) differ, each requires Plaintiff to adequately allege the existence of a RICO enterprise.  Thus, the Court examines whether Plaintiff has met this requirement.

An "enterprise" includes, first, "any individual, partnership, corporation, association, or other legal entity," or second, "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  As Plaintiff does not allege that all Defendants constitute a legal entity, the relevant inquiry here is whether Plaintiff has sufficiently alleged that Defendants are an associated-in-fact enterprise.

To sufficiently allege the existence of an associated-in-fact enterprise, a plaintiff must allege the existence of both "'an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'"  *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc) (*citing United States v. Turkette*, 452 U.S. 576, 583 (1981)).  "A RICO plaintiff must allege a structure for the making of decisions separate and apart from the alleged racketeering activities, because the existence of an enterprise at all times remains a separate element which must be proved."  *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1112 (9th Cir. 2003), *overruled on other grounds*, *Odom*, 486 F.3d at 551.

Additionally, an associated-in-fact enterprise must have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 129 S.Ct. 2237, 2244 (2009).  Finally, as the Supreme Court has explained (when considering the analogous criminal RICO statute), proof of a pattern of racketeering activity "does not necessarily establish" proof of an enterprise.  *Turkette*, 452 U.S. at 583.  "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."  *Id.*; *see also Simon v. Value Behavior Health, Inc.*, 208 F.3d 1073, 1083 (9th Cir. 2000) ("a group does not constitute an

enterprise unless it exists independently from the racketeering activity in which it engages." (citations omitted).

Various Defendants argue that Plaintiff has not sufficiently alleged the existence of an "enterprise" separate and apart from the alleged pattern of racketeering activity.  They note that Plaintiff's allegations suggest that the enterprise is indistinguishable from the pattern of racketeering activity, because at one point, Plaintiff's TAC states: "Defendants did also conspire to conduct and participate in said RICO enterprise through a pattern of racketeering activity."  TAC ¶ 135.

The Court concludes that, although the appendices to Plaintiff's TAC contain conclusory allegations concerning an alleged conspiracy, Plaintiff's TAC has not sufficiently alleged the existence of an enterprise "separate and apart from the pattern of activity in which it engages."  Nor has Plaintiff adequately alleged any "structure for the making of decisions separate and apart from the alleged racketeering activities," *Wagh*, 348 F.3d 1102, 1112.

Plaintiff's failure to sufficiently plead the existence of a RICO enterprise compels dismissal of his RICO claims.  Accordingly, the Court GRANTS defendant's motions to dismiss as to Plaintiff's eighth and ninth claims with prejudice, as it concludes that Plaintiff has alleged no facts that suggests that an amendment would not otherwise be futile.

VIII. <u>Plaintiff's Second and Third Claims: FDCPA and RFDCPA</u>

Plaintiff's second claim, for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, is directed at the Debt Collector Defendants, the NAF/Mann Bracken Defendants, and the NAF/Mann Bracken Individual Defendants.

Under the provisions of the FDCPA, debt collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).  To establish a violation of the FDCPA, Plaintiff must show: (1) he was a consumer (2) who was the object of a collection activity arising from a consumer debt, and (3) the defendant is a "debt collector" as defined by the FDCPA, (4) who engaged in an act or omission prohibited by the FDCPA. *See Miranda v. Law Office of D. Scott Carruthers*, No. 10-cv-1487, 2011 WL 2037556, at *4 (E.D. Cal. May 23,

2011)(*citing Turner v. Cook*, 362 F.3d 1219, 1227–28 (9th Cir. 2004).

Plaintiff's FDCPA claim alleges that he is a consumer who was the object of collection activities for disputed debts, and that the named defendants for this claim are "debt collectors" who engaged in the following improper acts as follows: (1) the Debt Collector Defendants violated 15 U.S.C. § 1692e(10), which prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"; (2) the Debt Collector Defendants violated 15 U.S.C. § 1692e(5), which prohibits a "threat to take any action that cannot legally be taken or that is not intended to be taken," because the NAF arbitration process "was not legal"; (3) the Debt Collector Defendants, NAF/Mann Bracken Defendants, and NAF/Mann Bracken Individual Defendants violated 15 U.S.C. § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."  For these violations, Plaintiff seeks injunctive relief, actual and statutory damages, and litigation costs.

Plaintiff's third claim, for violations of the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 *et seq.*, is similar to Plaintiff's federal FDCPA claim.  However, whereas the FDCPA claim was directed only at the Debt Collector Defendants, the NAF/Mann Bracken Defendants, and the NAF/Mann Bracken Individual Defendants, the RFDCPA claim also seeks to hold the Bank Defendants liable.

The provisions of FDCPA are incorporated in the RFDCPA under Cal. Civ. Code § 1788.17.  Consequently, conduct by a debt collector that violates the FDCPA violates RFDCPA as well. *See* Cal. Civ. Code § 1788.17; *Hosseinzadeh v. M.R.S. Assoc.*, 387 F. Supp. 2d 1104, 1118 (C.D.Cal.2005).

The RFDCPA claim alleges that (1) the Debt Collector Defendants violated Cal. Civ. Code § 1788.13(i) "by falsely representing the true nature of the business or services being rendered by them in conjunction with" the NAF; (2) Mann Bracken violated Cal. Civ. Code § 1788.13(e) "by falsely representing that [Plaintiff's] alleged Chase debts may have been increased by the addition [of] NAF-related fees and charges when such fees or charges could not be legally added to the existing obligation"; and (3) Mann Bracken violated Cal. Civ. Code § 1788.14(b) by attempting to collect from Plaintiff "the whole or any part of [] Mann Bracken's fee or charge for services rendered, or other expenses

inccurred by [] Mann Bracken in the collection of [Plaintiff's] alleged Chase debts.   TAC ¶¶ 95-96.

Additionally, as the RFDCPA provides that, with limited exceptions, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the FDCPA, Cal. Civ. Code § 1788.17, Plaintiff alleges that Mann Bracken and the other Debt Collector Defendants have violated the RFDCPA through the same alleged violations of the FDCPA asserted in Plaintiff's second claim.   TAC ¶ 97.

Finally, Plaintiff's RFDCPA claim alleges that the Bank Defendants:

- Made false or misleading representations to Plaintiff and the general public about the nature of services rendered by the NAF;
- Engaged in unconscionable and unfair means to collect Plaintiff's alleged debts;
- Jointly and separately conspired to enforce mandatory arbitration through the NAF; and
- Attempted to use, threatened to use, implied they would use and/or used the NAF to collected alleged debts from Plaintiff.

TAC ¶ 98.   And, specifically as to Chase, Plaintiff alleges that its "use of Mann Bracken in conjunction with and in the context of the NAF, despite actual knowledge of Mann Bracken's fraudulent business practices . . . constituted unfair and unconscionable means to collect debts and as such, also violated the RFDCPA, §1788.17."   *Id.*

A.   <u>Standing</u>

The purpose of the FDCPA is "to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists."   *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (citation omitted).   Similarly, the purpose of the RFDCPA is "to prohibit debt collectors from engaging in unfair and deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." *Keen v. Am. Home Mortg. Servicing, Inc.*, 664 F. Supp. 2d 1086, 1095 (E.D. Cal. 2009) (*citing* Cal. Civ. Code § 1788.1(b)).

Thus, any alleged consumer-debtor appears to have standing to complain of FDCPA and RFDCPA violations, regardless of actual damages. *Baker*, 677 F.2d at 781 (affirming district court's conclusion that statutory damages under FDCPA are "available without proof of actual damages."). Accordingly, the Court concludes that Plaintiff has sufficient standing to assert these claims.

B. <u>NAF Defendants</u>

Defendants National Arbitration Forum, Inc., National Arbitration Forum, LLC, and Dispute Management Services, LLC, d/b/a Forthright, Inc. (together, the "NAF Defendants") argue that they are not "debt collectors" within the meaning of the FDCPA or RFDCPA. Plaintiff's opposition does not address this argument. Pursuant to the FDCPA, a "debt collector" is:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Under the RFDCPA, a debt collector is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).

The Court concludes that, as Plaintiff's TAC fails to allege that the NAF Defendants are involved in collecting debts (aside from his conclusory statement that the NAF Defendants are debt collectors under the meaning of the statutes), Plaintiff cannot state a FDCPA or RFDCPA claim as to the NAF Defendants. Accordingly, the NAF Defendants are DISMISSED with prejudice as to Plaintiff's second and third claims.

C. <u>Accretive and Agora</u>

Defendants Accretive, LLC ("Accretive") and Agora Fund I GP, LLC ("Agora") argue that Plaintiff has "simply lumped them in with the other defendants" as to the FDCPA and RFDCPA claims and that the TAC contains no allegations that Accretive or Agora threatened Plaintiff with any

actions or attempted to collect debts from Plaintiff.  Plaintiff's opposition does not challenge this argument.

As noted above, the Court previously gave Plaintiff leave to amend his complaint to add specific allegations in order to put each defendant on notice as to the nature of each his claims against them.  As the TAC fails to allege any specific acts by Accretive or Agora with respect to collection activities directed at Plaintiff, Accretive and Agora are DISMISSED with prejudice as to Plaintiff's second and third claims.

D.  <u>Joinder</u>

Although Plaintiff has demonstrated Article III standing to pursue his FDCPA and RFDCPA claims, it appears that he has improperly joined certain parties.  Federal Rule of Civil Procedure 20(a), which allows for permissive joinder, provides:

> (2)  Defendants.  Persons . . . may be joined in one action as defendants if:
> (A)  any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B)  any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. Proc. 20(a); *see also League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977).  "The first prong, the 'same transaction' requirement, refers to similarity in the factual background of a claim."  *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).  The Ninth Circuit has interpreted the phrase "same transaction, occurrence, or series of transactions or occurrences" to require a degree of factual commonality underlying the claims.  *Id.*  Proper joinder under Rule 20 requires that the "parties must assert rights, or have rights asserted against them, that arise from related activities — a transaction or an occurrence or a series thereof."  *Coal. for a Sustainable Delta v. U.S. Fish & Wildlife Serv.*, 2009 U.S. Dist. LEXIS 111743, at *2 (E.D. Cal. Nov. 17, 2009) (citation omitted)

MINUTES FORM 90                    Initials of Deputy Clerk ___jr___
CIVIL - GEN

Pursuant to Federal Rule of Civil Procedure 21, misjoinder of parties "is not a ground for dismissal of an action."  Instead, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  Where there is a misjoinder, "the court can generally dismiss all but the first named [defendant] without prejudice to the institution of new, separate lawsuits [against] the dropped [defendants]." *Coughlin*, 130 F.3d at 1350.

Here, the Court concludes that Plaintiff has improperly joined numerous parties with respect to his various debt collection activities claims.  To the extent such alleged activities relate to wholly independent debt collection activities, joinder is improper.  Therefore, pursuant to Rule 21, the Court will drop all defendants but Mann Bracken – the first named surviving defendant - and any defendants properly joined with Mann Bracken as to Plaintiff's surviving claims.

Thus, the relevant series of transactions or occurrences is the debt collection events associated with Plaintiff's credit card accounts with defendants JPMorgan Chase & Co and Chase Bank USA, N.A. (together, "Chase"), as these are the accounts that Plaintiff alleges were assigned to Mann Bracken in 2006.  TAC ¶ 37.  As discussed more fully below, Plaintiff has sufficiently stated claims as to Chase and Mann Bracken. These parties are, therefore, properly joined under Rule 20.  Also properly joined are the Mann Bracken individual defendants: J. Michael Cline, Michael Kelly, W. Christopher Bracken III, M. Douglas Mann, and James D. Branton, although for the reasons stated below, Plaintiff has failed to state a claim as to these defendants.

In addition, in 2008, Plaintiff alleges that Chase sold Plaintiff's alleged debts to the "Palisades Defendants" (consisting of defendants Palisades Collections, LLC, Asta Funding, Inc., Asta Group Inc., Asta Funding Acquisition I, LLC, Asta Funding Acquisition II, LLC, Asta Funding Acquisition III, LLC, and Asta Commercial, LLC).  Thus, the Court concludes that the Palisades Defendants are properly joined in this action as well, as their alleged liability arises from the collection of the same underlying alleged debts: Plaintiff's accounts with Chase.

However, the Court concludes that Plaintiff has improperly joined BofA, Gerald E. Moore & Associates, P.C., Worldwide Asset Purchasing II, LLC, West Asset Management, Inc., Frederick J. Hanna & Associates,

Dennis Henry, Worldwide Asset Purchasing, Asset Management Professionals, LLC, First National Collection Bureau, and FNBO. Plaintiff's claims against each of these defendants are related to debt collection activities associated with alleged debts completely independent from Plaintiff's alleged debts with Chase.[1]/  Therefore, pursuant to Federal Rule of Civil Procedure 21, these parties are dropped from this action.  Plaintiff may refile his surviving claims, to the extent they have not been dismissed, against these dropped defendants in appropriate separate actions.

The Court turns to the arguments raised by the remaining defendants in their motions to dismiss Plaintiff's RFDCPA and FDCPA claims.

E.   Mann Bracken LLP

Mann Bracken first argues that Plaintiff's FDCPA and RFDCPA claims are time barred.  The FDCPA and RFDCPA both provide for a one-year limitations period.  15 U.S.C. § 1692k(d); Cal. Civ. Code § 1788.30(f). However, the letters Plaintiff complains of were sent in 2007.  TAC ¶ 37, 41.

The Ninth Circuit has held that "in general, the discovery rule applies to statutes of limitations in federal litigation, that is, '[f]ederal law determines when the limitations period begins to run, and the general federal rule is that 'a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Magnum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009)(*citing Norman-Bloodsaw v. Lawrence Berkeley Lab.,* 135 F.3d 1260, 1266 (9th Cir. 1998).

As Plaintiff notes in his opposition to Mann Bracken's motion, the TAC alleges that Plaintiff was unaware of the "collusion" between the various defendants until late 2009, when Plaintiff read certain news articles allegedly describing the NAF "conspiracy."  TAC ¶ 68.

---

[1]/ Plaintiff's allegations against defendants Gerald E. Moore & Associates, P.C., Worldwide Asset Purchasing II, LLC, West Asset Management, Inc., Asset Management Professionals, LLC, Frederick J. Hanna & Associates, Dennis Henry, Worldwide Asset Purchasing, and First National Collection Bureau arise from activities in connection with Plaintiff's alleged debts with BofA.  TAC ¶¶ 51, 52.  Plaintiff's claims against FNBO arise from debts allegedly incurred with FNBO.  TAC ¶ 48.

Pursuant to the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Moreover, a further "catch-all" provision prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Under these statutes, "[a] debt collection letter is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Gonzales v. Arrow Financial Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) (citations omitted).

Here, Plaintiff alleges the following misleading representations by the Debt Collector Defendants:

- Representations that NAF was an independent impartial judicial forum when it was not (TAC ¶ 87);
- Representations that awards issued by NAF were not subject to or the result of any conflict of interest, when they were (*id.*);
- Representations that additional fees and costs awarded against consumers were lawful when they were not (*id.*).

Moreover, Plaintiff alleges that Mann Bracken threatened to force him into NAF arbitration, in violation of 15 U.S.C. § 1692e(5), which prohibits a "threat to take any action that cannot legally be taken . . . ." Finally, Plaintiff alleges that the process of attempting to funnel Plaintiff's claims into the NAF arbitration process violated 15 U.S.C. § 1692f, which prohibits the use of unconscionable means to collect debts.

In light of these allegations, the Court concludes that, at this stage, Plaintiff has sufficiently demonstrated that his FDCPA and RFDCPA claims are timely. "Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)(internal quotations and citation omitted). "A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.* (internal quotations and citation omitted). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the

plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* at 1207 (internal quotations and citation omitted).

Here, as in *Supermail Cargo, Inc.*, Plaintiff asserts that his failure to discover defendants' wrongdoing, *i.e.*, that their alleged representations concerning NAF arbitrations were deceptive, "was not due to [his] lack of diligence, but rather to [defendants'] deliberate failure to provide [him] with accurate information." *Id.* at 1208. Accordingly, Mann Bracken's motion to dismiss Plaintiff's FDCPA and RFDCPA claims on statute of limitations grounds is DENIED.

Mann Bracken also moves to dismiss Plaintiff's RFDCPA claim on the grounds that the claim is barred against Mann Bracken on the basis of the California litigation privilege, which it contends protects Mann Bracken from liability for its alleged communications with Plaintiff. Cal. Civ. Code § 47(b).[2/]  However, the litigation privilege does not apply to alleged RFDCPA violations.  In *Komarova v. National Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 337-40 (2009), the California Court of Appeal determined that where application of the privilege would "negate" the plaintiff's RFDCPA claims, the privilege is inapplicable. *Id.* at 340 ("[W]e conclude that the [RFDCPA] would be significantly inoperable if it did not prevail over the privilege where, as here, the two conflict.").  Accordingly, the Court concludes that the litigation privilege is inapplicable to shield Mann Bracken from liability for Plaintiff's RFDCPA claim.

Finally, Mann Bracken moves to dismiss the RFDCPA claim on the grounds that the RFDCPA does not apply to attorneys.  Specifically, the RFDCPA exempts attorneys from its definition of "debt collector."  Cal. Civ. Code § 1788.2.  Because Mann Bracken is a limited liability partnership, it argues that it is similarly exempt from the RFDCPA's definition of "debt collector."

A number of courts have ruled that, while the RFDCPA excludes lawyers, it does not exclude law firms. *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1061 (C.D. Cal. 2009); *Miranda v. Law Office of D. Scott Carruthers*, No. 10-cv-01487, 2011 WL 2037556, *7 (E.D. Cal. May 23, 2011); *Abels v. JBC Legal Group, P.C.*, 227 F.R.D.

---

[2/]   Civil Code section 47 exempts from liability a "publication or broadcast" made "[i]n any . . . judicial proceeding [or] . . . other official proceeding authorized by law."  Cal. Civ. Code § 47(b).

541, 547-48 (N.D. Cal. 2005); *Owens v. Brachfeld*, No. C07-4400, 2008 WL
3891958, *3 (N.D. Cal. Aug. 20, 2008); *Navarro v. Eeskanos & Adler*, No.
C06-2231, 2007 WL 549904, * (N.D. Cal. Feb. 20, 2007).  Mann Bracken
does not present any authority to the contrary.  The Court finds
persuasive the authority holding that a law firm may be a "debt
collector" under the RFDCPA.  Thus, Mann Bracken's motion to dismiss
Plaintiff's RFDCPA claim on this basis is DENIED as well.

   F.   Palisades Defendants

   The Palisades Defendants argue that the TAC is "still completely
devoid of a single fact on which any of [Plaintiff's] claims against the
Palisades Defendants are based."  However, Plaintiff alleges that on May
22, 2008, he received a letter from the Palisades Defendants claiming
that they had purchased certain of Plaintiff's alleged debts, and
attempting to collect from Plaintiff.  TAC ¶ 43.  Plaintiff also claims
that the letter contained "threatening references" to NAF arbitration.
*Id.*  Viewing the allegations in the light most favorable to Plaintiff,
the Court concludes that Plaintiff has stated an FDCPA and RFDCPA claim
as to the Palisades Defendants.  The Palisades Defendants' motion is
therefore DENIED as to Plaintiff's second and third claims.

   G.   Individual Defendants

   Defendants J. Michael Cline, Michael Kelly, W. Christopher Bracken
III, M. Douglas Mann, and James D. Branton have moved to dismiss
Plaintiff's FDCPA and RFDCPA claims on the grounds that Plaintiff has
not sufficiently pleaded specific allegations as to each of them.

   Plaintiff's FDCPA and RFDCPA claims allege that the individual
defendants, along with Mann Bracken and Chase, violated the FDCPA and
RFDCPA by "engaging in unfair and unconscionable means to collect debts"
from Plaintiff, employed "collusive practices" in order to mislead
Plaintiff, and that their "involvement in the NAF conspiracy, collusive
efforts and debt collection practices as described herein constitute
unfair and unconscionable means to collect debts."  TAC ¶ 88.  Plaintiff
further alleges that these remaining individual defendants "designed,
controlled, and directed the policies and practices of the NAF/Mann
Bracken corporate Defendants, and as such, damaged Plaintiff."  *Id.*

   The Ninth Circuit has not decided the question of whether an
individual employee of a debt collection company may be held personally

liable as a "debt collector" under the FDCPA for acts committed within the scope of employment. *See Robinson*, 654 F. Supp. 2d at 1059. There is a split among persuasive authority. The Sixth Circuit and the majority of district courts that have considered the issue have concluded that employees can be held personally liable under the FDCPA. *Id.* (collecting cases). On the other hand, the Seventh Circuit has held that employees cannot be held personally liable under the FDCPA unless the plaintiff can pierce the corporate veil. *Id.* (citations omitted).

The Court is persuaded by the first approach. However, because the FDCPA imposes personal, not derivative, liability, serving as a shareholder, officer, or director of a debt collecting corporation is not, in itself, sufficient to hold an individual liable as a "debt collector" under the FDCPA. *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1073 (E.D. Cal. 2008). "Regardless of the employee's rank within the company, § 1692a(6) requires that the individual 'regularly collect[ed] or attempt[ed] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'" *Id.* (*citing* 15 U.S.C. § 1692a(6)).

Here, Plaintiff has failed to sufficiently allege facts establishing that these individual defendants were regularly engaged in the collection of debts, or that they materially participated in collecting the debts at issue. *Id.*; *del Campo v. Kennedy*, 491 F. Supp. 2d 891, 904 (N.D. Cal. 2006).

Instead, Plaintiff relies on the conclusory allegation that these individual defendants "designed, controlled, and directed the policies" of Mann Bracken and other entities. TAC ¶ 88. Plaintiff provides no factual support for this conclusion, and his opposition papers present no applicable authority demonstrating that control over the affairs of a company provides a basis for individual vicarious liability under the FDCPA. Accordingly, the motion to dismiss of defendants J. Michael Cline, Michael Kelly, W. Christopher Bracken III, M. Douglas Mann, and James D. Branton is GRANTED. Because Plaintiff has now had two opportunities to amend his complaint to allege specific facts establishing liability for these defendants and has failed to do so, these defendants are dismissed with prejudice. *Kendall*, 518 F.3d at 1051-52.

H.   <u>Chase</u>

Finally, the Court considers whether Plaintiff has stated an RFDCPA claim as to Chase.  Again, Plaintiff's TAC seeks to hold Chase liable for violating RFDCPA section 1788.17, which requires all debt collectors to comply with the provisions of the FDCPA.

As noted above, the RFDCPA defines "debt collector" more broadly than the FDCPA.  The RFDCPA defines "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection."  Cal. Civ. Code § 1788.2(c).  Unlike the FDCPA, the RFDCPA does not exempt creditors who regularly collect their own debts from its application.  *Id.; see also* Cal. Civ. Code, § 1788.17 (generally adopting debt collection practice requirements and remedies of FDCPA, but not adopting FDCPA's definitions).

Chase moves to dismiss Plaintiff's RFDCPA claim on the grounds that Plaintiff has not alleged any element of the FDCPA, incorporated into the RFDCPA through Cal. Civ. Code § 1788.17, that Chase is purported to have violated.  However, it appears that Plaintiff's TAC seeks to hold Chase liable for the actions of Mann Bracken.  *See, e.g.,* FAC ¶ 39 ("At the time Mann Bracken sent these letters on behalf of and at the direction of Chase . . .).  The question of agency is one of fact, and Plaintiff's allegations, if true, are sufficient to establish such agency.  *Magencomp Corp. v. Athene Co.*, 209 Cal. App. 3d 526, 536 (1989)(citations omitted).  At this stage, the Court concludes that Plaintiff has sufficiently alleged an RFDCPA claim as to Chase.  Chase's motion to dismiss as to Plaintiff's RFDCPA claim is therefore DENIED.

IX.   <u>Plaintiff's Fifth Claim: Bus. & Prof. Code Section 17200</u>

The Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, precludes unfair competition, which may include any business practice that is forbidden by law.  *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1047-48 (9th Cir. 2000) (*citing Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).

In light of the Court's rulings herein, the remaining defendants' motions to dismiss as to Plaintiff's fifth claim for UCL violations are GRANTED as follows:

- Because Plaintiff's CLRA claim is dismissed, Plaintiff's UCL claim for violations of the CLRA must likewise be DISMISSED with prejudice;

- Plaintiff's UCL claim must be revised to assert FDCPA and RFDCPA claims under the UCL against only those defendants against which the underlying FDCPA and RFDCPA claims survive;

- Because Plaintiff's Section 17500 claim is dismissed, Plaintiff's UCL claim for violations of Section 17500 must be DISMISSED with prejudice.

X.   <u>Conclusion</u>

In light of the Court's rulings herein, defendants' motions to dismiss are GRANTED in part and DENIED in part.

Defendants Bank of America, N.A., Gerald E. Moore & Associates, P.C., Worldwide Asset Purchasing II, LLC, West Asset Management, Inc., Frederick J. Hanna & Associates, Dennis Henry, Worldwide Asset Purchasing, First National Collection Bureau, Asset Management Professionals LLC and First National Bank of Omaha, N.A. are DROPPED from this action.  Plaintiff may refile his claims, to the extent they have survived this motion to dismiss, against these dropped defendants in appropriate separate actions.

Remaining defendants Mann Bracken LLP, JPMorgan Chase & Co., Chase Bank USA, N.A., Palisades Collections, LLC, Asta Funding, Inc., Asta Group Inc., Asta Funding Acquisition I, LLC, Asta Funding Acquisition II, LLC, Asta Funding Acquisition III, LLC, and Asta Commercial, LLC shall have 21 days from the date of this ruling to file an answer to the surviving FDCPA, RFDCPA, and UCL claims in Plaintiff's TAC.

IT IS SO ORDERED.

MINUTES FORM 90                        Initials of Deputy Clerk   __jr__
CIVIL - GEN